Bulkley
v.
Waterman.

### BULKLEY *against* WATERMAN.

Though the power of the court to grant a new trial where the jury have entirely mistaken the evidence, or drawn from it a palpably wrong conclusion, is a salutary power, and one fully established; yet it is to be cautiously exercised, and only in cases where manifest injustice has been done.

Where the plaintiff, in an action of book-debt, testified that the goods were sold for cash on delivery, deducting sixty days interest; the defendant testified that he bought them on a credit of sixty days, telling the plaintiff that he might want to pay within that time, and if he did, he should claim the privilege of so doing, deducting the interest; and the court submitted the matter in controversy to the jury, who found for the plaintiff; it was held, that the verdict ought not to be set aside as against evidence.

Where the goods sold were certain plank, and the defence was, that they were not as good as they were represented to be, when the contract was made; there was much conflicting testimony respecting the quality of them, the defendant and several witnesses testifying that a part were not good, and the plaintiff and a like number of witnesses testifying that they were a fair lot; and the court submitted the matter in controversy to the jury, who found for the plaintiff; it was held, that the verdict ought not to be set aside as against evidence.

Another defence in such case being that there was no acceptance of the plank, or any part of them, by the defendant, and so the plaintiff was precluded from a recovery, by the statute of frauds and perjuries; it appeared, that by the terms of the contract, the plank were to be delivered upon a certain wharf, and they were there all actually delivered; the defendant testified that he never received them; but he admitted that he saw a part of them on the wharf, and said nothing to the plaintiff about not delivering the residue; and it was proved, that to one person he said he had bought the plank, and to another, who applied to him to buy a part, he could not spare any of them, as he calculated to send them away; the question of acceptance being left to the jury, they found for the plaintiff; it was held, that the verdict ought not to be set aside as against evidence.

THIS was an action of book debt, tried at *Norwich, March* term, 1839, before *Bissell,* J.

On the trial, the plaintiff gave in evidence his book account against the defendant, amounting to 188 dollars, 63 cents, for a parcel of plank claimed to have been sold and delivered in the month of *April,* 1838.

In support of his account, the plaintiff testified, that about the middle of *April* 1838, the defendant called on him and asked him if he had sold his plank; the plaintiff told him he had not, but that a Mr. *Church* had spoken to him respecting them, but he did not know whether he intended to take them.

The defendant then said, that if he took them, he wanted to close the bargain that day, and to have them delivered immediately.	The plaintiff agreed to sell the plank to the defendant at 10 dollars *per* thousand.	The sale was for cash on the delivery, deducting 60 days interest.	They were to be delivered at the new wharf at *Norwich City.*	The defendant inquired of him if the plank were good ; he told him he thought they were a fair lot ; that they were principally at *Abel's* mill ; and he requested the defendant to call and see them.	To this, the defendant replied, it was not necessary, as they would be inspected by Mr. *Gavitt.*	Shortly afterwards, *Church* called on the plaintiff to purchase the plank, and the plaintiff told him he had sold them to the defendant.	He delivered them all according to the contract.	They were inspected by *Gavitt*, who gave him a bill thereof.	The plank were generally good ; but a few of them at *Randall's* mill, were sawed out of logs that had lain there two or three years.	The plaintiff did not afterwards see the defendant until all the plank were delivered.	The defendant then said, that these were not such plank as he purchased, and refused to pay for them, or have anything to do with them.

In support of the defence, the defendant testified, that he bought the plank of the plaintiff, at the prices charged in the bill ; that he inquired of the plaintiff if the plank were good, who told him they were ; that they were bought for a man at *Nantucket ;* that about the same time, the defendant bought a lot of ship plank of *Asa Brown;* that these, and what he bought of the plaintiff, would have been sufficient to fulfil his contract at *Nantucket ;* that he bought the plaintiff's plank on a credit of 60 days ; that he told the plaintiff that he might want to pay before the expiration of that time, and if he did, he should claim the privilege of so doing, deducting the interest ; that he made the same bargain with *Brown ;* that the plaintiff's plank were not such as he bought, and were not fit for ship plank, and would not answer his contract at *Nantucket ;* that he never *received* the plank.	On his cross-examination, the defendant testified, that he saw a part of the plank on the wharf before the whole were delivered ; that he said nothing to the plaintiff about not delivering the residue, and never saw him until after he had delivered the whole, when the defendant refused to take them. The defendant also testified, that *Church* applied to him for a

*New-London,*
July, 1839.

Bulkley
*v.*
Waterman.

whole or part of the plank, and that he refused to let him have them; but that he believed he had not then seen them.

*Oliver Randall,* a witness called by the defendant, testified, that he knew nothing about the plank, except a part of them that were sawed at his mill; that some of these were good and merchantable, and others were not; that three of the logs from which they were sawed, were damaged.

*Hiram Palmer,* also called by the defendant, testified, that he drew a load of the plank from *Randall's* mill; that some were decent, good plank, and some were not so good, being a little damaged on the sides.

*Asa Gavitt,* also called by the defendant, testified, that he inspected the plank; that the last load brought were good plank, and the others were not; that they were not a lot of merchantable ship plank, and he so told the plaintiff; that ship plank are much higher than those sold for other purposes. On cross-examination, he testified, that he gave to the plaintiff a bill, and that he made a deduction for defects; that the reason why they were not fit for ship plank was, that they were short, and had rotten spots.

*Peleg Church,* a witness for the plaintiff, testified, that he called on the plaintiff, to buy some plank, who said he had sold them to *Waterman,* (the defendant;) that he afterwards applied to *Waterman,* who said that he could not spare any of them, as he calculated to send them away immediately.

*Asa Brown,* also a witness for the plaintiff, testified, that he saw the logs of which the plaintiff's plank were sawed, at *Abel's* mills; that they were a fair lot; that some were small; that he sold his plank to the defendant, on a credit of 60 days.

*Seth Whitney,* also a witness for the plaintiff, testified, that he had seen the plank, but had not overhauled them; that they looked pretty fair; that *Waterman,* (the defendant,) told him he had bought them.

*Edwin Gavitt* testified, that he had seen the plank on the wharf; that from what he saw, he should think them a fair lot; that he could not say how they were inside.

*Hezekiah Abel,* jr. testified, that a part of the plank were sawed at his mill; that they were a fair lot of merchantable plank; were about as good as *Brown's.*

*William P. Nash* testified, that he saw the plank when they came in, but never viewed them with the eye of a purchaser;

that he had seen them frequently on the pile, and should think <span>*New-London,*</span> them, so far as he could judge, a fair lot of plank; that they <span>July, 1839.</span> were of a pretty good length.

<span>Bulkley</span>
<span>*v.*</span>
<span>Waterman.</span>

*James Bulkley*, a brother of the plaintiff, testified, that he helped cart the plank, and owned a part of them; that they were merchantable plank, though a few were unsound; that they were about as good as *Brown's.*

*Hezekiah Abel* testified, that he saw the plank at the saw mill; thought them a fair lot, and about as good as *Brown's.*

Upon this evidence the defendant insisted, 1. that the contract was within the statute of frauds and perjuries; 2. that the defendant bought a lot of good merchantable plank, that were to pass the inspection of *Asa Gavitt ;* and that these plank did not pass such inspection; 3. that the plank were not in fact merchantable; 4. that the action was prematurely brought, the plank being sold on a credit of 60 days, which had not expired when the action was brought.

The plaintiff claimed, that the plank were merchantable, and passed the inspection of *Gavitt ;* that the action was not prematurely brought, as the plank were sold for ready money; and that the case was not within the statute of frauds and perjuries, as the defendant had received the property.

These several questions were submitted to the jury, who returned a verdict for the plaintiff. The defendant moved for a new trial, on the ground that the verdict was against the evidence in the cause.

*Strong*, in support of the motion.

. *Child* and *Foster*, contra.

WAITE, J. The defendant in this case, claims, that in three particulars, the verdict was against the evidence, and in consequence asks for a new trial.

1. It is said, that the action was prematurely brought; that the plank were sold upon a credit of sixty days; and within that period the action was commenced. The only testimony upon this point came from the parties themselves. The plaintiff says, the sale was for cash, on the delivery of the plank, deducting sixty days interest :—the defendant, that he bought them on a credit of sixty days, but told the plaintiff that he

*New-London,* might want to pay before, and if he did, should claim the pri-
*July, 1839.* vilege of so doing, deducting the interest. Here was one
witness against another, and both equally interested. It was
for the jury to say, which of the two, under all the circum-
stances, was entitled to the most credit. Surely, it would be
too much for this court to say, that the jury, upon this testi-
mony, found a verdict *manifestly against the weight of evi-
dence.*

Bulkley
*v.*
Waterman.

2. It is further insisted, that the plank were not such as
they were represented to be, when the contract was made.
According to the statement of the defendant, they were rep-
resented as being good plank ; and according to that of the
plaintiff, they were a fair lot. Respecting the quality of them,
there was much conflicting testimony. The defendant and
several witnesses testified, that a part were not good plank.
The plaintiff and a like number of witnesses testified, that
they were a fair lot. The question upon this evidence was
peculiarly within the province of the jury.

3. It is also said, that there was *no acceptance* of the plank,
or any part of them, by the defendant ; and consequently, the
plaintiff, by the provisions of the statute for the prevention of
frauds and perjuries, is precluded from a recovery. *Stat.* 247.
*tit.* 39. *s.* 2. Now, upon this subject, it was agreed, by the
parties, that by the terms of the contract, the plank were to be
delivered upon a wharf in *Norwich,* and they were all there
actually delivered. Was there any act done, by the defend-
ant, from which the jury might infer an acceptance of the
whole, or any part, of the plank ? The defendant does in-
deed say, that he never received them ; but he admits, that he
saw a part of them on the wharf, and said nothing to the plain-
tiff about not delivering the residue, until after the whole were
delivered ; and then he refused to take them. He said to one
witness, that he had bought the plank ; and to another, who
applied to him to buy a part, that he could not spare any of
them, as he calculated to send them away.

From the silence of the defendant, when he had an oppor-
tunity of examining a portion of the plank on the wharf; his
suffering the plaintiff to go on and complete the delivery,
without objection on his part ; and his declarations to the
witnesses that he had bought them, and could not spare any
of them, we think the jury, in coming to the conclusion that

there had been such an acceptance as to take the case out of <span>*New-London,* July, 1839.</span> the statute, did not so manifestly err as to make it our duty to send the cause to another jury.

<span>Bulkley *v.* Waterman.</span>

Upon all the points there was conflicting testimony ; and it was for the jury, who had an opportunity of seeing and hearing the witnesses, and observing the manner in which they testified, to draw their own conclusions. The question is not now, whether the evidence detailed in the motion, is such, that, had the cause been tried before us, it would have brought our minds to a different result from that to which the jury have come, but whether it is such as to satisfy our minds that the verdict is manifestly wrong.

It may sometimes happen, that a jury may entirely mistake the evidence, or draw from it a palpably wrong conclusion· Under such circumstances, the power of a court of justice to send the cause to be examined before another jury, has been repeatedly exercised, and is fully established. The principle is a highly salutary one, and calculated, when discreetly used, to inspire confidence in the trial by jury—that verdicts clearly and manifestly wrong, may not be placed entirely beyond the corrective power of the law. But, at the same time, it is a power to be rarely and cautiously exercised, and only in cases where manifest injustice has been done. It ought not to be carried so far as to subject every verdict to a revision before the judges, and render the trial by jury a mere matter of form. This view of the subject is in accordance with the *English* decisions. Thus *Tindall*, C. J., speaking of verdicts against the weight of evidence, says, that the court in such case, " ought to exercise, not merely a cautious, but a strict and sure judgment before they send the cause to a second jury. The general rule under such circumstances, is, that the verdict once found shall stand ; the setting it aside is the exception, and ought to be an exception of rare and almost singular occurrence."—*Melin* v. *Talyor*, 3 *Bing. N. C.* 109.

For these reasons, we think a new trial ought not to be granted.

In this opinion the other Judges concurred.

New trial not to be granted.